David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| TROY A. GARCIA, | : |
| | : Civil Action No.: |
| Plaintiff, | : |
| v. | : |
| | : **COMPLAINT FOR DAMAGES** |
| SPECIALIZED LOAN SERVICING LLC; | : **PURSUANT TO THE FAIR CREDIT** |
| AMERICAN HONDA FINANCE CORP.; | : **REPORTING ACT, 15 U.S.C. § 1681, ET** |
| TOYOTA FINANCIAL SERVICES; WELLS | : **SEQ.** |
| FARGO CARD SERVICES; EQUIFAX | : |
| INFORMATION SERVICES, LLC, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |
| | : |
| | : |

### JURISDICTION AND VENUE

1.     This Court has federal question jurisdiction because this case arises out of violation of

federal law. 15 U.S.C. §1681 *et seq.*; 28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F.Supp.2d 941, 946 (D. Nev. 2011).

2. This action arises out of each Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").

3. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Equifax has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

## PARTIES

4. Plaintiff TROY A. GARCIA ('Plaintiff") is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5. Defendant SPECIALIZED LOAN SERVICING LLC ("SLS") is a corporation doing business in the State of Nevada.

6. Defendant SLS is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7. Defendant AMERICAN HONDA FINANCE CORP. ("HONDA") is a corporation doing business in the State of Nevada.

8.     Defendant HONDA is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

9.     Defendant TOYOTA FINANCIAL SERVICES ("TOYOTA") is a corporation doing business in the State of Nevada.

10.    Defendant TOYOTA is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

11.    Defendant WELLS FARGO CARD SERVICES ("WFCS") is a corporation doing business in the State of Nevada.

12.    Defendant WFCS is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

13.    Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

14.    Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants' named.

## INTRODUCTION

15.    The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the

banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

16. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

17. Plaintiff, by and through his attorneys, brings this action to challenge the actions of SLS, Honda, Toyota, WFCA, and Equifax (or jointly as "Defendants") with regard to erroneously reporting derogatory credit information to national reporting agencies.

18. Defendants failed to properly investigate Plaintiff's disputes, damaging Plaintiff's creditworthiness.

## GENERAL ALLEGATIONS

19. On or about 5/26/2011, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. §1301 *et seq.* Plaintiff's case was assigned Case Number 11-18222-mkn (the "Chapter 13" or "Bankruptcy").

20. The obligations ("Debt") to each Defendant herein (as applicable) were scheduled in the Bankruptcy and each respective creditor-Defendant, or its predecessor in interest, received notice of the Bankruptcy.

21. On May 11, 2016, the Plaintiff's Chapter 13 Plan was confirmed (the "Confirmed Chapter 13 Plan" or "Confirmation Order").

22. A confirmed plan constitutes a new contract between the debtor and creditors and a creditor's rights are defined by the confirmed plan. Consequently, a pre-petition claim provided for in a confirmed plan is no longer a pre-petition claim. The claim is a right to payment arising from the confirmed plan. *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 649, 2007 Bankr. LEXIS 2655, *1 (Bankr. S.D. Tex. 2007).

23. Plaintiff made all payments required under the terms of the Confirmed Chapter 13 plan.

24. None of the Defendants named herein filed any proceedings to declare their alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq.*

25. None of the Defendants named herein obtained relief from the "automatic stay" codified at 11 U.S.C. §362 *et seq.* while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff for any *personal* liability.

26. Accordingly, the debts to each Defendant named herein (as applicable) were discharged through the Bankruptcy on 8/01/2016.

27.     Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any of the creditor-defendants to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court.

28.     However, Defendants named herein, and each of them, either reported or caused to be reported inaccurate information after the Bankruptcy as discussed herein.

29.     Defendant's reporting post-Bankruptcy derogatory information was inaccurate and misleading in that each Defendant continued reporting information based on each respective Defendant's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the bankruptcy filing, thereby rendering the disputed information "inaccurate".

30.     The adverse information reported by Defendants was based on each respective Defendant's improper enforcement and reporting of pre-bankruptcy obligations, where such reporting failed to comply with the payment structure set forth in the Plaintiff's Chapter 13 Plan.  Failing to report consistent with the terms of the Chapter 13 plan was therefore inaccurate, since all the Plaintiff's pre-bankruptcy creditors (whether eventually discharged or not) were subject to repayment pursuant to the Chapter 13 plan terms while the Bankruptcy was pending.

31.     Additionally, Defendant's inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provides guidance for credit reporting and FCRA compliance.

32.     The Consumer Data Industry Association ("CDIA") publishes the Metro 2 ("Metro 2") reporting standards to assist furnishers with their compliance requirements under the FCRA.

33.     Courts rely on such guidance to determine furnisher liability.  *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

34.     On information and belief, Defendants herein adopted and at all times relevant implemented the Metro 2 format.

35.     On information and belief, each furnisher-Defendant named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

36.     The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," and after "Plan Completed" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs.  *See e.g.*, 2015 CDIA Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 − 6-22.

37.     Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *id*., with the following relevant exceptions:

//

//

//

a.   <u>Current Balance</u>

    i.    For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the outstanding balance amount. *Id.*

    ii.    However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 plan balance, which should decline as payments are made." *Id.* at 6-22.

    iii.    And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id.*

b.   <u>Scheduled Monthly Payment Amount</u>:

    i.    For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "contractual monthly payment amount." *Id.* at 6-21.

    ii.    However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "Chapter 13 Payment Amount." *Id.* at 6-22.

    iii.    And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "Zero." *Id.*

38.   Despite Metro 2 Format's instructions, each furnisher-Defendant named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after the Plaintiff filed Bankruptcy as further set forth below.

39.     In turn, each of the credit reporting agencies named herein, rereported the inaccurate information, thus violating their duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b) when preparing a consumer report.

40.     To this end, the adverse reporting on the Plaintiff's consumer report departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

41.     A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

## THE EQUIFAX VIOLATIONS

## SLS Misreported Credit Information

## RE: Account No. 0191

42.     In an Equifax credit report dated September 13, 2016, SLS inaccurately reported that the Plaintiff still owed an outstanding balance of $73,643 even though SLS's debt was discharged in the Bankruptcy. Specifically, Plaintiff surrendered the property associated with this debt, and therefore it was inaccurate for SLS to report a balance any greater than $0.

43.     SLS also inaccurately reported that the Plaintiff was "past due" in the amount of $7,373. Since Plaintiff surrendered the property associated with this debt, there was a $0 balance due at the time SLS reported the past due balance.

44.     SLS also reported an account "status" of "Charge-Off" and a "Balloon Payment Amount" of $53,419.  This was inaccurate, since the Plaintiff performed all obligations required under the Chapter 13 Plan and obtained a discharge.  Moreover, Plaintiff surrendered the

property associated with this debt and it was inaccurate for SLS to report that the Plaintiff's "status" was "Charge-Off" and a "Balloon Payment Amount" of $53,419 after the Chapter 13 filing, since the Plaintiff surrendered the property associated with this debt and fully performed all obligations owed to SLS after filing the Chapter 13.

45.    It is well established that a bankruptcy discharge relieves a consumer of a legal obligation to repay a discharged debt.  *Riekki v. Bank of Am.*, 2016 U.S. Dist. LEXIS 76495, *5-6 (D. Nev. June 10, 2016).

46.    Thus, SLS's and Equifax's reported statements that Plaintiff still owed a debt and the implication that the debt was still collectible following the bankruptcy discharge were inaccurate. See *id.*

47.    On or about October 18, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed SLS's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by SLS.

48.    Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

49.    Upon information and belief, upon receiving the Equifax Dispute Letter, Equifax timely notified SLS of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

50.    Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

51.     On or about November 3, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 6301049586) that SLS and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

52.     A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

53.     SLS and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

54.     SLS and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

55.     SLS and Equifax re-reported the inaccurate derogatory information on Plaintiff's report. Specifically, SLS and Equifax still inaccurately reported an account "status" of "Charge Off" and a "Balloon Pay Amount" of $53,419.

56.     SLS and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

57.     Due to SLS's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

58.     Plaintiff's Equifax Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. §1681i(b). Specifically, the Plaintiff requested that in the event Equifax failed to make the requested corrections identified in the Plaintiff's Equifax Dispute Letter that Equifax include a statement on the Plaintiff's credit report stating that the instant account was disputed. However, Equifax failed to provide such a statement and thereby breached its statutory obligations under 15 U.S.C. §1681i(b).

59.     Upon information and belief, Equifax also failed in Plaintiff's subsequent consumer reports containing the above disputed information to clearly note that this account was disputed by the Plaintiff and provide either the Plaintiff's dispute statement or a clear and accurate codification or summary of the dispute in violation of Equifax's statutory obligations under 15 U.S.C. §1681i(c).

60.     Reporting and rereporting the above-referenced derogatory information also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

61.     Plaintiff's continued efforts to correct SLS's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with SLS and Equifax were fruitless.

62.     SLS's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful.  Plaintiff is, accordingly, eligible for statutory damages.

63.     Also as a result of SLS's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation a denial of a Chase

credit card, out-of-pocket expenses of mailing and transportation related to challenging the Defendants' wrongful representations, and stress.

64.     By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, SLS and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and/or (E), 1681i(a) and 1681e(b), respectively.

## HONDA Misreported Credit Information

## RE: Account No. 6540

65.     In an Equifax credit report dated September 13, 2016, HONDA inaccurately reported that there was a "scheduled payment amount" of $399, even though Plaintiff paid off the debt in full and no payments were due on this account creating the misleading and false impression that a debt was still owed and due.

66.     On or about October 18, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed HONDA's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by HONDA.

67.     Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

68.     Upon information and belief, upon receiving the Equifax Dispute Letter, Equifax timely notified HONDA of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

69.     Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

70.     On or about November 3, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 6301049586) that HONDA and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

71.     A reasonable investigation by these Defendants would have indicated that Plaintiff paid off the debt in full.

72.      HONDA and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

73.     HONDA and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

74.     HONDA and Equifax re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, HONDA and Equifax still inaccurately reported that there was a "scheduled payment amount" of $399, even though Plaintiff paid off the debt in full.

75.     HONDA and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

76.     Due to HONDA's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

77.     Plaintiff's Equifax Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. §1681i(b). Specifically, the Plaintiff requested that in the

event Equifax failed to make the requested corrections identified in the Plaintiff's Equifax Dispute Letter that Equifax include a statement on the Plaintiff's credit report stating that the instant account was disputed. However, Equifax failed to provide such a statement and thereby breached its statutory obligations under 15 U.S.C. §1681i(b).

78.    Upon information and belief, Equifax also failed in Plaintiff's subsequent consumer reports containing the above disputed information to clearly note that this account was disputed by the Plaintiff and provide either the Plaintiff's dispute statement or a clear and accurate codification or summary of the dispute in violation of Equifax's statutory obligations under 15 U.S.C. §1681i(c).

79.    Reporting and rereporting the above-referenced derogatory information also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

80.    Plaintiff's continued efforts to correct HONDA's and Equifax's erroneous and negative reporting of the debt by communicating Plaintiff's dispute with HONDA and Equifax were fruitless.

81.    HONDA's and Equifax's continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful.  Plaintiff is, accordingly, eligible for statutory damages.

82.    Also as a result of HONDA's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation a denial of a Chase credit card, out-of-pocket expenses of mailing and transportation related to challenging the Defendants' wrongful representations, and stress.

83.     By inaccurately reporting account information relating to the debt after notice and confirmation of its errors, HONDA and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and/or (E), 1681i(a) and 1681e(b), respectively.

### TOYOTA Misreported Credit Information

### RE: Account No. 8723

84.     In an Equifax credit report dated September 13, 2016, TOYOTA inaccurately reported that there was an "actual payment amount" of $14,461, even though Plaintiff paid off the debt in full and no payments were made or due on this account creating the misleading and false impression that a debt was still owed and due.

85.     TOYOTA also inaccurately reported that there was a "scheduled payment amount" of $440, even though Plaintiff paid off the debt in full and no payments were due on this account creating the misleading and false impression that a debt was still owed and due.

86.     On or about October 18, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed TOYOTA's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by TOYOTA.

87.     Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

88.     Upon information and belief, upon receiving the Equifax Dispute Letter, Equifax timely notified TOYOTA of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

89.     Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

90.     On or about November 3, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 6301049586) that TOYOTA and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

91.     A reasonable investigation by these Defendants would have indicated that Plaintiff paid off the debt in full.

92.     TOYOTA and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

93.     TOYOTA and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

94.     TOYOTA and Equifax re-reported the inaccurate derogatory information on Plaintiff's report.  Specifically, TOYOTA and Equifax still inaccurately reported that there was an "actual payment amount" of $14,461, even though Plaintiff paid off the debt in full. Also, TOYOTA and Equifax still inaccurately reported that there was a "scheduled payment amount" of $440, even though Plaintiff paid off the debt in full.

95.     TOYOTA and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

96.     Due to TOYOTA's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15

U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

97.    Plaintiff's Equifax Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. §1681i(b). Specifically, the Plaintiff requested that in the event Equifax failed to make the requested corrections identified in the Plaintiff's Equifax Dispute Letter that Equifax include a statement on the Plaintiff's credit report stating that the instant account was disputed. However, Equifax failed to provide such a statement and thereby breached its statutory obligations under 15 U.S.C. §1681i(b).

98.    Upon information and belief, Equifax also failed in Plaintiff's subsequent consumer reports containing the above disputed information to clearly note that this account was disputed by the Plaintiff and provide either the Plaintiff's dispute statement or a clear and accurate codification or summary of the dispute in violation of Equifax's statutory obligations under 15 U.S.C. §1681i(c).

99.    Reporting and rereporting the above-referenced derogatory information also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

100.    Plaintiff's continued efforts to correct TOYOTA's and Equifax's erroneous and negative reporting of the debt by communicating Plaintiff's dispute with TOYOTA and Equifax were fruitless.

101.    TOYOTA's and Equifax's continued inaccurate and negative reporting of the debt in light of its knowledge of the actual error was willful.  Plaintiff is, accordingly, eligible for statutory damages.

102.    Also as a result of TOYOTA's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation a denial of a Chase credit card, out-of-pocket expenses of mailing and transportation related to challenging the Defendants' wrongful representations, and stress.

103.    By inaccurately reporting account information relating to the debt after notice and confirmation of its errors, TOYOTA and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and/or (E), 1681i(a) and 1681e(b), respectively.

### WFCS Misreported Credit Information

### RE: Account No. 6396

104.    In an Equifax credit report dated September 13, 2016, WFCS inaccurately reported past due balances from September 2014 through June 2016. This was inaccurate, since the Plaintiff performed all obligations owed to WFCS after filing Chapter 13 and obtained a discharge.  Moreover, WFCS was paid according to the Chapter 13 Plan by the Chapter 13 Trustee and it was inaccurate for WFCS to report balances "past due" after the Chapter 13 filing, since the Plaintiff fully performed all obligations owed to WFCS after filing the Chapter 13.

105.    On or about October 18, 2016, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed WFCS's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by WFCS.

106.    Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

107.  Upon information and belief, upon receiving the Equifax Dispute Letter, Equifax timely notified WFCS of the dispute based on its mandated statutory duty pursuant to 15 U.S.C. § 1681i.

108.  Defendants were each required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

109.  On or about November 3, 2016, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 6301049586) that WFCS and Equifax received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6).

110.  A reasonable investigation by these Defendants would have indicated that Plaintiff filed for Chapter 13 bankruptcy and made all required Chapter 13 plan payments, since Plaintiff obtained a discharge.

111.   WFCS and Equifax failed to conduct a reasonable investigation as required by 15 U.S.C. §§ 1681s-2(b)(1)(A) and/or 1681i(a), and wrongly verified inaccurate information in connection with Plaintiff's credit reports.

112.  WFCS and Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §§ 1681s-2(b)(1)(B) and 1681i(a), respectively.

113.  WFCS and Equifax re-reported the inaccurate derogatory information on Plaintiff's report.   Specifically, WFCS and Equifax still inaccurately reported past due balances from December 2014 through June 2016.

114.  WFCS and Equifax, upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.S.C. §§ 1681s-2(b)(1)(B) and/or 1681i(a), respectively.

115. Due to WFCS's and Equifax's failure to reasonably investigate Plaintiff's dispute, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and/or 1681e(b), respectively.

116. Plaintiff's Equifax Dispute Letter also included a statement of dispute as that term is meant pursuant to 15 U.S.C. §1681i(b). Specifically, the Plaintiff requested that in the event Equifax failed to make the requested corrections identified in the Plaintiff's Equifax Dispute Letter that Equifax include a statement on the Plaintiff's credit report stating that the instant account was disputed. However, Equifax failed to provide such a statement and thereby breached its statutory obligations under 15 U.S.C. §1681i(b).

117. Upon information and belief, Equifax also failed in Plaintiff's subsequent consumer reports containing the above disputed information to clearly note that this account was disputed by the Plaintiff and provide either the Plaintiff's dispute statement or a clear and accurate codification or summary of the dispute in violation of Equifax's statutory obligations under 15 U.S.C. §1681i(c).

118. Reporting and rereporting the above-referenced derogatory information also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

119. Plaintiff's continued efforts to correct WFCS's and Equifax's erroneous and negative reporting of the discharged debt by communicating Plaintiff's dispute with WFCS and Equifax were fruitless.

120.   WFCS's and Equifax's continued inaccurate and negative reporting of the discharged debt in light of its knowledge of the actual error was willful.  Plaintiff is, accordingly, eligible for statutory damages.

121.   Also as a result of WFCS's and Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation a denial of a Chase credit card, out-of-pocket expenses of mailing and transportation related to challenging the Defendants' wrongful representations, and stress.

122.   By inaccurately reporting account information relating to the discharged debt after notice and confirmation of its errors, WFCS and Equifax failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and/or (E), 1681i(a) and 1681e(b), respectively.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *ET SEQ.* (FCRA)

123.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

124.   The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

125.   As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

126.    As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

### PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

//

//

//

//

//

//

//

**TRIAL BY JURY**

127.        Pursuant to the seventh amendment to the Constitution of the United States of

America, Plaintiff is entitled to, and demands, a trial by jury.


Dated: June 21, 2017

                             Respectfully submitted,

                             By  /s/ David H. Krieger, Esq.

                             David H. Krieger, Esq.
                             Nevada Bar No. 9086
                             HAINES & KRIEGER, LLC
                             8985 S. Eastern Ave., Suite 350
                             Henderson, NV 89123
                             Phone: (702) 880-5554
                             FAX: (702) 385-5518
                             Email: dkrieger@hainesandkrieger.com

                             Matthew I. Knepper, Esq.
                             Miles N. Clark, Esq.
                             KNEPPER & CLARK LLC
                             10040 W. Cheyenne Ave., Suite 170-109
                             Las Vegas, NV 89129

                             Attorneys for Plaintif